UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

N.A., ON BEHALF OF HIMSELF INDIVIDUALLY
AND ON BEHALF OF HIS MINOR CHILD, N.A.1,

|  |  |
|---|---|
| Plaintiffs, | Civ. No. 23-cv-108 |
|  | COMPLAINT |

- against -

NEW YORK CITY DEPARTMENT OF
EDUCATION, NEW YORK CITY BOARD OF
 EDUCATION, AND CHANCELLOR DAVID
BANKS IN HIS OFFICIAL CAPACITY,

Defendants.
_____

## PRELIMINARY STATEMENT

1.     This is an action alleging that Defendants, the New York City Department of
Education ("DOE"), the Chancellor of the New York City Schools, in his Official Capacity, and
the Board of Education (collectively "Defendants"), violated Plaintiffs' rights under the
Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq*.,
and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 ("Section 504"), as well as provisions
of New York State law.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' federal claims under the IDEA pursuant
to 20 U.S.C. § 1415, 42 U.S.C. § 1988, and as an action raising a federal question under 28 U.S.C.
§ 1331.

3.     This Court also has jurisdiction over Plaintiffs' pendent state claims under 28
U.S.C. § 1367.

4.      Plaintiffs also seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as it is the judicial district in which Defendants are situated and/or reside.

PARTIES

6.      Plaintiff, N.A., is the father and natural guardian of N.A.1, a child who has been diagnosed with, *inter alia*, an Autism Spectrum Disorder ("Autism").[1]

7.      Plaintiff N.A.'s first language is Bangla. N.A.'s mother's first language is also Bangla.

8.      N.A. and N.A.1 reside in Queens, New York, with N.A.'s mother.

9.      N.A.1 is a child with a disability who is eligible for a Free Appropriate Public Education ("FAPE") under the IDEA.

10.     N.A.1 is a qualified individual with a disability who is eligible for a FAPE under Section 504 and is protected from discrimination based upon his disability under Section 504.

11.     Defendant THE NEW YORK CITY BOARD OF EDUCATION (the "Board of Education" or the "Board") is the body charged with promulgation of responsibilities under N.Y. Educ. Law § 2590-b and N.Y. Educ. Law § 4404.

12.     Defendant DAVID BANKS is the Chancellor of the New York City School District (the "Chancellor") and is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h.

---

[1] Initials are used throughout this Complaint to preserve the confidentiality of sensitive medical, educational, and disability-related information under the IDEA and the Family Educational Rights and Privacy Act of 1974 ("FERPA").

13.     Upon information and belief, Defendant THE NEW YORK CITY DEPARTMENT OF EDUCATION ("Department" or "DOE") was created by the Board pursuant to the Board's By-Laws.

14. Upon information the DOE alleges to be the local educational agency ("LEA") as defined in the IDEA, and thus bears the responsibilities of an LEA under the IDEA and in the New York State Education Law.

15. The DOE claims it is a municipal corporation and an agency of New York City.

16. All Defendants jointly and/or individually are recipients of federal financial assistance.

17. All Defendants jointly and/or individually constitute the LEA under the IDEA and state law.

18. When the "DOE" is referenced throughout, the term DOE refers individually to Defendant DOE, as well as collectively to Defendants.

<u>LEGAL FRAMEWORK</u>

15.     The IDEA guarantees that all eligible children with disabilities, ages three through twenty- one, must be offered a free, appropriate public education ("FAPE").   20 U.S.C. § 1412(a)(1).

16.     A FAPE must meet each student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d) (1) (A)-(B).

17.     A FAPE must "include an appropriate . . . secondary school education in the State involved" and be provided in conformity with an Individualized Education Program ("IEP").  *See* 20 U.S.C. §§ 1401(9), 1414(d)(2)(A); 8 N.Y.C.R.R. § 200.4(e)(1)(ii).

18.     To be entitled to a FAPE, a child must have one or more of thirteen disabling conditions and, by reason of his/him disability, require "special education" and "related services." 34 C.F.R.

§ 300.8(a)(1).   Defendants have classified N.A.1 as having Autism, which is one of the thirteen listed disabilities.  34 C.F.R. § 300.8(a)(1).

19.     Defendants are responsible for providing a FAPE to all eligible children in New York City and for promulgating policies and procedures in accordance with the IDEA.

20.     Every child with the designated disability classifications is entitled to an Individualized Education Program, or "IEP" and the LEA (here, Defendants) must provide an IEP which must is individually tailored to each student and is meant to serve as a blueprint for each child's special education services.  20 U.S.C. § 1414(d).

21.     By the beginning of each school year, DOE Defendants must have an IEP in place that offers a FAPE to each eligible child.  20 U.S.C. § 1414(d)(2).

22.     Before an IEP can be developed, a child must be evaluated in accordance with detailed procedures outlined in federal and state law.

23.     A child is reevaluated in accordance with the same standards at least once every three years, or more frequently if a parent or school district believes it is necessary.

24.     Among other things, an IEP must be developed by a properly constituted IEP team that includes particular members, including the parent and a district representative who is knowledgeable about the services and able to commit district resources.   20 U.S.C. § 1414(d)(1)(B).

25.     The IEP team must meet at least annually, and more frequently, if necessary, to modify a child's services and/or to address "[a] lack of expected progress toward the annual goals and in the general education curriculum."  20 U.S.C. § 1414(d)(4)(A)(ii)(I).

26.     The IDEA broadly defines the categories of services that must be offered, which include, but are not limited to, special education, related services, supplementary aids and services, transition services, assistive technology ("AT"), and positive behavioral supports and services (collectively "Special Education Services").

27.     The IDEA prescribes, in detail, the process for developing IEPs and their contents. 20 U.S.C. § 1414(d)(1)(A), (d)(2); 34 C.F.R. §§ 300.320(a)(2)-(3); 300.324; N.Y. Educ. Law § 4401, *et seq.;* and 8 N.Y.C.R.R.§ 200.4(d)(2)(iii)

28.     For example, an IEP must contain the results of a child's most recent evaluations, as well as an accurate and consistent description of his/him strengths and present levels of academic achievement and functional performance (called "Present Levels of Performance" or "PLPs").  20 U.S.C.  § 1414(d)(1)(A).

29.     An IEP must contain "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modification or supports for school personnel that will be provided for the child."   20 U.S.C. § 1414(d)(1)(A)(i)(IV).

30.     Each IEP must also contain research-based instructional strategies unless they are not feasible, including positive behavioral interventions and supports for children whose behavior impedes their learning and/or that of others. 34 C.F.R. §§ 300.320(a)(4), 300.324(a)(2)(i); 8 N.Y.C.R.R. §§ 200.4(d)(2)(v)(b), 200.4(d)(3)(i).

31.     An IEP team must also consider whether a student would benefit from assistive technology ("AT").  34 C.F.R. §§ 300.5, 300.6, 300.105, 300.324(a)(2)(v).

32.     The Defendants are obligated to make decisions about IEPs, services and placements based on student's individual needs, and not policies, procedures or availability of resources.

33.     One of the IDEA's most well-known due process rights is the right to request an impartial hearing "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child" or the provision of FAPE to a child.  20 U.S.C. § 1415(b)(6)(A).

34.     The IDEA requires that a child "stay put" in his or her last agreed upon-placement when a Due Process Complaint ("DPC") is filed.  20 U.S.C. §1415(j).

35.     Pendency rights are supposed to be automatic and unconditional; they attach when a parent files for due process.

36.     A student's "stay-put" rights ("pendency") can be changed by agreement between the parties, or by a final, unappealed order of an IHO, SRO, or court.

37.     An unappealed order constitutes an agreement between a parent and the DOE.

38.     After the filing of a DPC, a parent "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State Educational Agency ("SEA")] or by the Local Education Agency ("LEA") as determined by State law or by the [SEA]."  20 U.S.C. § 1415(f)(1)(A).

39.     The IDEA sets forth detailed requirements for hearing procedures.  20 U.S.C. § 1415(f); 34 C.F.R. §§ 300.511-516.

40.     In New York City, City Defendants are responsible for ensuring that impartial hearings comport with the IDEA's requirements.

41.     A parent that prevails in a due process hearing is entitled to have the school district, here the Defendants, pay their reasonable attorney's fees.

FACTS

42.     The parties agree that N.A.1's classification under the IDEA is "Autism."

43.     N.A.1 displays delays in receptive and expressive communication, academics, behavior, social skills, functional skills, such as activities of daily living skills ("ADLs") and fine and gross motor skills.

44.     Among other things, N.A.1 engages in maladaptive behaviors and struggles with self-direction, following directions, paying attention, interacting with peers and adults in private and group settings.

45.     N.A.1 has insufficient appreciation for danger and is unable to function independently in the community.

46.     N.A.1 also has sensory sensitivities.

47.     N.A.1 has severe Asthma and if often unable to tolerate medical care provided outside of his home.

48.     N.A.1 attends a New York State Approved Non-Public School ("NPS Program") in Queens.

49.     N.A.1 requires 1:1 instruction during most of the day, instruction in a dyad during some of the day, applied behavioral analysis ("ABA") services, instructional services that involve the taking of data, use of rewards and reinforcement and positive behavioral supports, parent

counseling and training, home-based services and a variety of other supports and services that the Defendants do not offer on IEPs as a matter of policy and/or procedures.

50.     N.A.1 also requires intensive occupational therapy ("OT") and speech and language therapy ("SLT").

51.     Since 2010, N.A.1's parents have filed multiple, repeated administrative hearings to try to obtain a FAPE for N.A.1, and to obtain and keep his ABA program.

52.     Hearing officers have found that the DOE denied N.A.1 a FAPE over the years, starting with a decision issued in 2011, which awarded N.A.1 ABA and additional services.

53.     In 2012, Defendants, N.A. and his wife agreed that N.A.1.'s needs could not be met in a public-school program. Defendants thereafter agreed to fund N.A.1's placement in a state-approved non-public school program ("NPS Program).

54.     N.A.1 requires 1:1 instruction, ABA services, extended school day services, as well as additional services to receive a FAPE and make progress in the areas of language (both rehearsed and spontaneous), socialization, eye contact, focusing, attention, visual-motor skills, fine motor skills, reading, writing, math, community integration, life skills, generalization, toileting, and activities of daily living ("ADLs"), and for purposes of developing transition skills.

55.     However, despite the fact that year after year, N.A.1's parents wins his hearings, Defendants have never recommended the ABA and additional services and limited travel time that N.A.1 needs, and N.A. and his wife have had to constantly file for due process hearings remain in litigation.

56.     In addition, on or about May 7, 2018, Plaintiff filed a federal complaint, *N.A. v. New York City Department of Education*, 18-cv-4048 (ALC), in the Southern District of New York, alleging *inter alia*, that Defendants failed to implement prior orders of impartial hearing

officers and failed to implement N.A.1's stay-put pendency placement for school years up to but not including the 2018-2019 school year.

57.     That action was settled up and through the 2017-2018 school year.

58.     However, while the first federal action was pending, the same complained-of actions were occurring for additional school years, and have continued from the 2018-2019 school year, up until the current time.

59.     On June 30, 2018, N.A. filed a DPC ("2018 DPC") with the DOE's Impartial Hearing Office ("IHO Office"), alleging, *inter alia*, that the DOE failed to provide N.A.1 a Free Appropriate Public Education ("FAPE") during the 2018-2019 school year, and raising claims pursuant to Section 504.

60.     The 2018 DPC was assigned the case number of 174359 ("Case No. 174359").

61.     On August 17, 2018, the IHO issued an interim order on pendency in favor of Plaintiffs, establishing N.A.1's stay-put placement.

62.     The DOE essentially conceded that it failed to provide N.A.1 a FAPE for the 2018-2019 school year and took no position on Plaintiffs' requested relief for the DOE's failure to provide N.A.1 a FAPE.

63.     On January 5, 2020, the hearing officer in Case No. 174359 issued a Findings of Fact and Decision ("2020 FOFD") that awarded relief to Plaintiffs, finding that the DOE denied N.A.1 a FAPE for the 2018-2019 school year and that the DOE failed to provide N.A.1's pendency.

64.     The 2020 FOFD awarded Plaintiffs compensatory relief for the denial of FAPE as well as compensatory relief for the DOE's failure to provide all of N.A.1's pendency.

65.     N.A. was the prevailing party as a result of the 2020 FOFD.

66.     The Defendants failed to appeal the 2020 FOFD.

67.     The DOE did not implement elements of the 2020 FOFD.

68.     Because N.A.'s pendency funding lapsed on January 5, 2020, N.A. had to immediately file another DPC, dated January 6, 2020 ("2020 DPC"), alleging, *inter alia*, that the DOE had denied N.A.1 a FAPE for the 2019-2020 school year.

69.     The 2020 DPC was assigned a Case No. of 191964.

70.     In mid-March 2020, the Pandemic shut down the student's NPS Program and in-person services.

71.     On or about April 29, 2020, the IHO in Case No. 191964 issued an interim order on pendency in favor of Plaintiffs.

72.     During the Pandemic, N.A. did not receive adequate pendency services from the NPS Program and missed almost all of his in-school and after-school related services.  However, after a gap of time, his 1:1 ABA providers started returning to the home on an in-person basis.

73.     On or about October 2020, the parties settled Plaintiffs' claims in his prior federal complaint, *N.A. v. New York City Department of Education*, 18-cv-4048.

74.     The IHO in Case No. 191964 issued her Findings of Fact and Decision in Case Number 191964 on January 11, 2021 ("the 2021 FOFD"), which awarded similar relief to Plaintiffs – compensatory relief for the denial of FAPE as well compensatory relief for N.A.1's missed pendency.

75.     The DOE did not implement all items of relief awarded in the 2021 FOFD.

76.     Further, the DOE did not implement the N.A.1's pendency placement and have not yet fully implemented the and/or the 2020 and 2021 FOFDs.

77.     On April 2, 2021, N.A. filed another DPC ("2021 DPC"), alleging, *inter alia*, that the DOE failed to create an IEP for the 2020-2021 school year, which was almost finished, and denied N.A.1 a FAPE for the 2020-2021 school year.

78.     Unfortunately, there was a gap in N.A.1's "pendency mandate" because the 2021 FOFD was issued on January 11, 2021, and the 2021 DPC was not filed until April 2, 2021.

79.     The 2021 DPC was assigned a Case No. of 207652.

80.     The DOE did not timely implement pendency when the 2021 DPC was filed.

81.     Further, the DOE has not been implementing N.A.1's pendency, despite the fact that the DOE does not dispute that N.A.1's pendency was based on the 2021 FOFD.

82.     Plaintiffs filed an amended DPC in Case No. 207652 on or about March 31, 2022, adding *inter alia* claims concerning a denial of FAPE for the 2021-2022 school year.

83.     N.A.1 remained entitled to his pendency services.

84.     In the fall of 2022, N.A.1 started to have seizures, which caused him to go to the emergency room and created an additional basis for his need to attend services close to his home, beyond his existing severe asthma.

85.     In addition, when N.A.1's pendency services were not implemented in school, N.A.1 engages in crying and school refusal.  His classroom in the fall was extremely chaotic with many staff changes, and injuries to the teacher caused by other students.

86.     Given his extreme physical fragility, his parents had to pick N.A.1 up after only part of the school day once the morning ABA provider was finished, because there were no ABA providers available to implement services during the remainder of the day.

87.     On or about November 8, 2022, Plaintiffs filed another DPC ("2022 DPC"), alleging a denial of FAPE for the 2022-2023 school year.

88.     Defendants designated the 2022 DPC as Case No. 241899.

89.     Plaintiffs requested, and the IHO granted, that Case No. 241899 be consolidated with Case No. 207652.

90.     Case No. 207652, which alleges a denial of FAPE for the 2020-2021, 2021-2022, and 2022-2023 school years, is currently pending.

91.     Defendants, however, are not implementing N.A.1's pendency in Case No. 207652.

92.     The DOE just held a new IEP meeting for N.A.1 this week and denied all of the additional services, that are part of his pendency. As per usual, the DOE advised the Parent that they have to pursue continuation of the services at the impartial hearing.  Plaintiffs now have to file yet another DPC.

93.     Further, throughout the hearings and school years, the Defendants have failed to provide adequate language access services to N.A., including adequate translation and interpretation services for N.A.'s native language Bangla.

**The DOE is Violating N.A.'s Pendency Rights**

94.     Defendants do not have policies and procedures in place to ensure that students' pendency rights are timely implemented such that the intended purpose of pendency is served.

95.     The DOE has not implemented and is not currently implementing N.A.1's stay-put placement.

96.     The DOE has not implemented or agreed to fund the services that N.A.1 was receiving when the 2021 DPC was filed.

**Defendants Apply Blanket Policies, Practices, and Procedures To The IEP and Placement Process**

97.     The DOE implements system-wide blanket policies and practices, offering only a limited and finite menu of services to children with disabilities who are entitled to a FAPE under the IDEA.

98.     Rather than engage in an individualized approach as required by the law, IEP teams only have a limited set of options available at an IEP meeting.

99.     Regardless of the number of times a parent like N.A. may win off-menu services, accommodations and supports, every year, at the IEP meeting, the DOE's staff are unable to consider continuation of those services and supports.  Instead, the parents are expressly told that they can only pursue N.A.'s services through litigation.

100.    As a result, N.A. and his wife are caught in an endless cycle of litigation and will have to remain in litigation until N.A.1 is no longer eligible for special education services.

101.    In addition, in a situation such as N.A.1's case, where the DOE admits that it does not have a public-school option, there are only a limited number of NPS Programs available for children with Autism.

102.    The NPS Programs do not offer "transition services" or "vocational" instruction.

103.    Further, there is only one school that is within the limited travel time that N.A.1 requires due to his Asthma.

104.    That NPS Program does not offer a 1:1 or 2:1 ratio.

105.    The DOE does not recommend 1:1 instruction on an IEP for a child with Autism who is recommended for another program, such as an ICT, special class, or private school unless those services are obtained through a due process proceeding or a court order ("via Litigation").

106.    The DOE does not offer a 1:1 instructional ratio or a 2:1 instructional ratio for children with Autism who are unable to remain in the general education or ICT setting.  The Parent

of any child that requires a special education class, with less than six children or a 1:1 or 2:1 instructional ratio, must engage in Litigation.

107.    The DOE does not recommend ABA on an IEP for a child with Autism unless those services are obtained via Litigation.

108.    The DOE does not recommend after school special education and related services on an on an IEP for a child with Autism unless those services are obtained via Litigation or provided through vouchers called RSAs or P-4s, in the event that the DOE is unable to implement an in-school IEP recommendation.

109.    The DOE does not recommend home-based special education and related services on an on an IEP for a school-age child with Autism who is also recommended for a school-based program unless those services are obtained via Litigation.

110.    If the DOE is recommending a specific NPS program, the DOE's IEP teams cannot recommend any special education or related services for a child with Autism unless the particular NPS program can provide the services, unless those services are obtained via Litigation.

111.    Unless the New York State Education Department ("NYSED") grants an exception, the DOE cannot fund or provide special education or related services N.A.1 outside of the services that are available at his NPS Program, unless the services are obtained via Litigation.

112.    The following services cannot be recommended on N.A.1's IEP, and are not offered by the Defendants absent an order or settlement obtained via litigation:

    a.  1.1 instruction by a teacher during the school day;

    b.  ABA;

    c.  Home-based special education services;

    d.  Home-based related services;

e.  After-school special education and/or related services;

f.  Coordination by a Board-Certified Behavior Analyst ("BCBA");

g.  Supervision by a BCBA.

113.  Defendants have also adopted illegal policies and procedures relative to transportation accommodations.

114.  Rather than evaluating students and empowering the IEP team to make decisions, the Defendants insist that parents obtain their own evaluations for purpose of transportation.

115.  If the parent does not obtain their own medical evaluation with respect to transportation, the child is not eligible for transportation accommodations.

116.  In addition, Defendants require the parents to make an application for special education transportation accommodations to the DOE's Office of School Health, which is not part of the IEP team.

117.  The OSH has unilateral authority whether to grant or deny transportation accommodation requests.

118.  Further, certain transportation requests can only be made for medical reasons.

119.  The DOE prevents their IEP teams from making individualized transportation accommodations unless those accommodations are pre-approved by OSH after the parent has presented their own medical evaluation.

120.  The DOE fails to implement the requirement under the IDEA to conduct medical evaluations when such evaluations are necessary to ensure that children with disabilities receive a FAPE and are required to inform the IEP process.

121.   Further, the DOE limits time accommodations for travel, regardless of student's individual needs.

122.    N.A.1 has been subject to these policies and practices and continues to be subjected to these policies and practices.

123.    There is no remedy through the administrative process to address the claims raised here, as IHOs do not have authority to order the Defendants to refrain from applying policies and practices to N.A.1.

124.    The DOE has failed to ensure that they have a mechanism for monitoring the implementation of related services at NPS Programs, such as the one attended by N.A.1.

125.    The DOE remains responsible for a FAPE even though N.A.1 is placed at an NPS Program.

126.    The DOE is therefore obligated to ensure that they have policies, procedures and protocols in place to ensure that children's related services and other IEP mandates are being delivered at NPS Programs.

127.    However, Defendants do not have these procedures and do not maintain any system for tracking related service attendance at NPS Programs.

128.    The DOE maintains a SESIS system but related service attendance for children in NPS Programs is not implemented into SESIS in real time. Thus, the DOE has no way of knowing whether and to what extent children are receiving related services at NPS Programs

129.    Further, although N.A.1 would have been entitled to an RSA and services from the DOE to make up for related services that he missed under pendency and/or pursuant to his uncontested aspects of his IEP if he attended a public school, because he attends an NPS Program, the only remedy his parents would have would be to file for a hearing to obtain compensatory services.

130.     The DOE does not have any policies to ensure real-time implementation of related service for children at NPS Programs when children are not receiving their mandated related services at those programs.

131.     Further, the DOE has failed to implement the requirements of the IDEA related to transition assessments, transition planning and transition services for children with Autism who attend NPS Programs.

132.     There are no NPS Programs for children with Autism that offer vocational and/or pre-vocational programs.

133.      The DOE has failed to ensure that they conduct appropriate transition assessments for children with Autism.

134.     The DOE has failed to ensure that they have trained and available staff to conduct transition assessments and planning for children with Autism who attend NPS Programs.

135.     The DOE has failed to ensure that children who attend NPS Programs have access to appropriate transition services.

136.     The DOE does not ensure that the NPS Programs – such as the one attended by N.A.1 – has appropriate transition service planning and services.

**Plaintiffs Need a Court Order to Allow an Equitable Remedy**

137.     The Defendants have failed to ensure the delivery of ABA and home-based services due to the shortage of providers generally as well as Defendants' refusal to offer certain services directly.

138.     Historically, there was no state license for an individual to provide ABA services.

139.    However, in 2014, the state adopted a new law creating a license for ABA services that restricts individuals from providing ABA without particular credentials ("NYS ABA Credentials") unless a limited exemption applies.  N.Y. Educ. Law §8803.

140.    Under the ABA law, several categories of individuals are exempt from the licensure requirements: any individual may provide ABA "in the course of such employment, if such person is employed" by a government agency, a private or public school, a preschool, or is an employee or contractor for early intervention or a student attempting to obtain a credential, although supervision of a student is required. N.Y. Educ. Law §8807 (2)(a), §8807 (3).

141.    The DOE does not employ and/or contract with providers who can deliver the ABA services ordered by the FOFDs and as part of N.A.1's pendency.

142.    Moreover, the ABA services at issue and that constitute part of N.A.1's stay-put are not offered at the NPS Program.

143.    There are not enough individuals who have NYS ABA Credentials for the DOE to implement the FOFDs or N.A.1's pendency placement. There are citywide shortages of individuals who have NYS ABA Credentials, particularly outside of Manhattan.

144.    As of the end of June 2018, the Defendants were funding providers to deliver alternative services to N.A.

145.    However, the agency stopped providing services.  The DOE did not step in to address the failure because the DOE itself does not have providers.

146.    The law permits parents to receive funding for educational service providers who do not meet state credentials or approval as a remedy for a denial of a FAPE.

147.    N.A.1 is not currently receiving his pendency program.

148.    There is a shortage of providers in Queens.

149.     N.A. should be allowed to receive funding for ABA to be delivered by providers who are "appropriately" proficient in the use of ABA even if those individuals are not credentialed under New York law.

150.     N.A. should be able to receive funding for alternative or substantially similar services as part of his stay-put placement.

151.     Plaintiffs are entitled to compensatory education and additional equitable relief based on the Defendants' inability to implement the FOFDs and N.A.1's stay-put placement.

152.     Plaintiffs are prevailing parties and are entitled to an award of attorneys' fees for work performed in connection with the two underlying due process hearings and this action.

153.     The fees and costs charged by Plaintiffs current and former counsel are consistent with and/or below market rates for the legal services performed, in light of counsels' experience and expertise and the complexity of the issues.

<u>CLAIMS</u>

FIRST CLAIM
SECTION 504 OF THE REHABILITATION ACT

154.     Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

155.     Defendants' conduct is knowing, intentional, reckless, and gross.

156.     N.A.1 is a qualified individual with a disability entitled to protection under Section 504.

157.     Defendants' repeated failure to ensure adequate translation and interpretation for N.A. violates Section 504.

158.     Defendants discriminated against N.A.1 under Section 504 by, *inter alia*, denying him reasonable accommodations, adopting systemic policies, procedures and practices that violate

N.A.1's rights under the IDEA, New York State law and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

SECOND CLAIM
THE IDEA

159.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

160.    Defendants did not provide N.A.1 a FAPE for the 2018-2019 and the 2019-2020 school years.

161.    Defendants' application of blanket policies and practices violates the IDEA.

162.    Defendants have failed, and continue to fail, to implement N.A.1's stay-put rights under the IDEA.

163.    Defendants have failed to implement the FOFDs.

164.    Defendants' repeated failure to ensure adequate translation and interpretation for N.A. violates the IDEA.

THIRD CLAIM
42 U.S.C. § 1983

165.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

166.    Defendants have violated 42 U.S.C. §1983 by depriving Plaintiffs, under color of state law, of their rights, privileges, and immunities under federal statutory and constitutional law.

167.    By implementing, promulgating, and continuing to enforce and/or effectuate policies, practices, and customs as alleged herein, Defendants have denied Plaintiffs educational

services to which she is entitled under the IDEA and New York law, in violation of 42 U.S.C. § 1983.

168.   By failing to supervise and train their employees and agents concerning due process and the laws and policies that protect Plaintiffs' rights under the IDEA and New York State Education law, Defendants have violated 42 U.S.C. §1983.

169.   By failing to ensure that the FOFDs were implemented, Defendants violated 42 U.S.C. §1983.

170.   The Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the provisions of the IDEA and Section 504 referenced herein were complied with, which deprived N.A.1 of his right to an appropriate education under federal and state law.

171.   Under color of state law, the Defendants deprived N.A.1 of his right to educational services afforded to her under New York State law, in violation of the Fourteenth Amendment of the U.S. Constitution.

172.   As a direct and proximate result of the Defendants' misconduct, N.A.1 suffered and continue to suffer harm, which will continue unless Defendants are enjoined from their unlawful conduct.

FOURTH CLAIM
NEW YORK LAW

173.   Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

174.   Defendants have violated Plaintiffs' rights under New York Constitution, the New York State Education Law §§ 3202, 3203, 4401, 4404 and 4410 and the Regulations of the New York State Commissioner of Education, 8 N.Y.C.R.R. §200, *et seq.*

<u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that the Court:

i.      Assume jurisdiction over this action;

ii.     Issue a TRO and preliminary injunction directing Defendants to immediately implement N.A.1's stay-put services;

iii.    Issue a declaratory judgment that Defendants have violated Plaintiffs' rights as alleged herein;

iv.     Issue a preliminary and permanent injunction (a) directing Defendants to implement the FOFDs; (b) ordering compensatory education and additional equitable relief for the violations alleged herein; (c) placing funds in escrow sufficient to ensure that there are staff available to implement any services ordered; (d) authorizing the funding and/or delivery of ABA services by individuals who are proficient in the delivery of ABA even if those individuals do not possess NYS ABA Credentials; and (e) awarding additional equitable relief to remedy the failure to implement the FOFDs and N.A.1's stay-put services;

v.      Award Plaintiff reasonable attorneys' fees and costs in accordance with his status as the prevailing party in the Impartial Hearings and implementation of FOFDs;

vi.     Award Plaintiff reasonable attorneys' fees and costs incurred in connection with this action; and

vii.    Award such other, and further, relief as to the Court may seem just and proper.

Dated:    January 5, 2023

         New York, New York


                                    Respectfully submitted,
                                    THE LAW OFFICE OF ELISA HYMAN,
                                    P.C.

/s/

By_____

Elisa Hyman, Esq.
The Law Office of Elisa Hyman, P.C.
42 West 24th Street, 2nd Floor
New York, NY 10010
Phone: (646) 572-9064
Fax: 646-572-9055
elisahyman@gmail.com